UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PAUL D. AMMERMAN,

                       Plaintiff,

v.                                                                                                             Case No. 24-cv-1379-pp

DENISE VALERIUS, *et al.*,

                       Defendants.

**ORDER SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER (DKT. NO. 4)**

      Plaintiff Paul D. Ammerman, who is incarcerated at the Wisconsin Resource Center and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants failed to provide adequate treatment for his pre-diabetes and diabetes. On November 22, 2024, the court received the full $405 filing fee. This decision resolves the plaintiff's motion for a preliminary injunction and temporary restraining order, dkt. no. 4, and screens his complaint, dkt. no. 1.

**I.    Screening the Complaint**

      A.    <u>Federal Screening Standard</u>

      Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The complaint names as defendants Nurse Denise Valerius, Doctor John/Jane Doe, two John/Jane Doe Nurses and Doctor Sukowaty at Columbia Correctional Institution. Dkt. No. 1 at 1. The complaint sues the defendants in their individual and official capacities. Id.

The plaintiff alleges that in December 2017, he underwent testing that showed his blood sugar levels were high and that he had symptoms of pre-diabetes. Id. at ¶20. He attached to the complaint his medical records showing this test result. Dkt. No. 1-2 at 4. On January 6, 2018, the plaintiff wrote to the Health Services Unit (HSU) and asked if he could "get on a diabetic diet." Dkt. No. 1 at ¶¶20, 26. He alleges that one of the Doe nurses did not conduct additional tests or treat his pre-diabetes. Id. at ¶20. The plaintiff alleges that both this Doe nurse and the Doe doctor knew about his diabetes risk but failed to provide preventative treatment. Id. at ¶¶20–21.

The plaintiff alleges that on January 7, 2018, Nurse Valerius responded to his request to the HSU and told him to address his issues at his next doctor's appointment. Id. at ¶27. She provided him "guidelines to follow to help [him] self-select healthy food options." Id. The plaintiff asserts that "[t]he defendants knew of a risk by sending [the plaintiff] a packet relating to diabetes" that instructed him "to exchange food items but [he] is in prison and cannot go to the store and buy exchanges." Id. at ¶22. He says he requested a

different diet and the "exchanges," but "the Defendants refused to provide them." Id. at ¶29. He also says he never had a doctor's appointment about his pre-diabetes. Id. at ¶28.

The plaintiff alleges that on January 18, 2018, he attempted to contact the HSU Manager about his elevated blood sugar levels. Id. at ¶30. He says that someone from the HSU (he does not say who) told him to "self-select to not eat sugar and/or bread." Id. at ¶31. He did not follow that advice because "that would limit [his] calorie intake to around 300–400 calories per day." Id. The plaintiff says he brought up his concern about his blood sugar twice "[t]hroughout the years," but that "the nurses and the Advanced Care Provider (ACP) informed [the plaintiff] that he was at that appointment for other reasons and that they would not discuss his blood sugar levels." Id. at ¶32. He says that when he filed HSU requests to discuss his blood sugar levels, staff told him to discuss it at his next appointment. Id. He says that he filed a previous lawsuit about this issue (he says he lost that suit), which "chilled [his] attempt to address other issues during other Health Service appointments." Id.

The plaintiff alleges that Dr. Sukowaty knew of his high blood sugar and pre-diabetes on or around June 22, 2021, but that she "failed to act and was negligent, malpractice [*sic*], or deliberately indifferent to [the plaintiff's] medial needs, resulting in [him] obtaining Type 2 Diabetes." Id. at ¶24. He says that he requested but "was refused a diet plan to prevent diabetes" and was told that "there were no diabetic diets" available in the prison "except for condiments." Id. at ¶33. He claims that this "was a lie" and that Wisconsin Division of Adult

4

Case 2:24-cv-01379-PP   Filed 01/22/25   Page 4 of 13   Document 6

different diet and the "exchanges," but "the Defendants refused to provide them." Id. at ¶29. He also says he never had a doctor's appointment about his pre-diabetes. Id. at ¶28.

The plaintiff alleges that on January 18, 2018, he attempted to contact the HSU Manager about his elevated blood sugar levels. Id. at ¶30. He says that someone from the HSU (he does not say who) told him to "self-select to not eat sugar and/or bread." Id. at ¶31. He did not follow that advice because "that would limit [his] calorie intake to around 300–400 calories per day." Id. The plaintiff says he brought up his concern about his blood sugar twice "[t]hroughout the years," but that "the nurses and the Advanced Care Provider (ACP) informed [the plaintiff] that he was at that appointment for other reasons and that they would not discuss his blood sugar levels." Id. at ¶32. He says that when he filed HSU requests to discuss his blood sugar levels, staff told him to discuss it at his next appointment. Id. He says that he filed a previous lawsuit about this issue (he says he lost that suit), which "chilled [his] attempt to address other issues during other Health Service appointments." Id.

The plaintiff alleges that Dr. Sukowaty knew of his high blood sugar and pre-diabetes on or around June 22, 2021, but that she "failed to act and was negligent, malpractice [*sic*], or deliberately indifferent to [the plaintiff's] medial needs, resulting in [him] obtaining Type 2 Diabetes." Id. at ¶24. He says that he requested but "was refused a diet plan to prevent diabetes" and was told that "there were no diabetic diets" available in the prison "except for condiments." Id. at ¶33. He claims that this "was a lie" and that Wisconsin Division of Adult

Institutions (DAI) policy allows for modified diets "based upon a documented health need." Id. He cites DAI policy #500.30.24, which he also attached to his complaint. Id.; Dkt. No. 1-2 at 12–14.

The plaintiff alleges that in April 2024, Sukowaty informed him that his blood sugar levels remained elevated, and that she had ordered additional testing. Id. at ¶34. He attached to the complaint a letter that he had received from Sukowaty dated March 29, 2024. Dkt. No. 1-2 at 16. He saw Sukowaty in person on April 5, 2024, at which time she informed him that his A1C measurement was 10.5.[1] Id. at 17. On May 8, 2024, the plaintiff underwent further blood testing that showed that his A1C had dropped to 9.6. Id. at 19. The plaintiff says that he reduced his carbohydrate and calorie intake, which caused him to lose thirty pounds in three months. Dkt. No. 1 at ¶35. The plaintiff alleges that in July 2024, he was transferred to the Wisconsin Resource Center (WRC), where he received a diabetic diet. Id. at ¶36. He says that his A1C has dropped to below diabetic levels, but that he remains diabetic for life and will need to take medication to manage his symptoms. Id. at ¶¶36–37.

The plaintiff seeks an injunction "ordering the Department of Corrections to follow policies regarding the safety and security of all inmates" and to pay for

---

[1] The A1C test "is a blood test that provides information about [one's] average levels of blood glucose, also called blood sugar, over the past 3 months." See The A1C Test & Diabetes, Nat'l Institute of Diabetes and Digestive and Kidney Diseases, https://www.niddk.nih.gov/health-information/diagnostic-tests/a1c-test. This test "can be used to diagnose type 2 diabetes and prediabetes" and is "the primary test used for diabetes management." Id.

his medical costs associated with his diabetes management. Id. at ¶¶44–45. He also seeks punitive and compensatory damages of $1 million against each defendant. Id. at ¶¶47–52.

C. Analysis

The court reviews the plaintiff's allegations about the medical treatment he received under the Eighth Amendment. Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (citing Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*). "The standard of deliberate indifference 'requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk.'" Stewart v. Wexford Health Sources, Inc., 14 F.4th 757, 763 (7th Cir. 2021) (quoting Huber v. Anderson, 909 F.3d 201, 208 (7th Cir. 2018)).

The complaint alleges that the defendants failed to manage or provide treatment for the plaintiff's pre-diabetes, which eventually resulted in his diagnosis of Type-2 diabetes. Type-2 diabetes is a serious medical condition "that is so obvious that even a lay person would perceive the need for a doctor's attention." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). The plaintiff's

alleged diagnosis and the physical harm that he says resulted or will result from that diagnosis "constitutes a serious medical condition under the objective deliberate indifference to medical needs factor." Maya v. Ill. Dep't of Corr., Case No. 17-CV-0546-NJR, 2017 WL 3491961, at *6 (S.D. Ill. Aug. 14, 2017). The court finds that these allegations satisfy the objective component of a deliberate indifference claim.

The plaintiff alleges that each of the five defendants were aware of his high blood sugar levels but failed to properly treat or help him manage that condition. He describes a circuitous series of denials of proper treatment for his pre-diabetes. He says he requested a diabetic diet, but that the defendants denied his requests. He attempted to file requests with the HSU about his blood sugar level, and HSU staff told him to discuss it at his next appointment. But at those medical appointments, the defendants told him that his appointment was for other reasons. It was only after he was diagnosed with Type-2 diabetes and transferred to another state prison that he was prescribed medication and given a diabetic diet. But he says that by then it was too late, and that he now is diabetic for life. Accepting these allegations as true for purposes of this decision, the court finds the complaint satisfies the subjective element of an Eighth Amendment claim against the defendants.

The plaintiff also seeks to proceed against the defendants in their official capacities. Claims against officials in their official capacities represent another way to plead an action against the entity that they represent or for which they work. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New

7

York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The court construes the official capacity claims as having been brought against the Department of Corrections (DOC), the agency for which the defendants work. Id. at 165–66. And because claims against the DOC are "no different from a suit against the State itself," the court construes these claims as if the plaintiff had brought them against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55). But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. That means that the plaintiff cannot recover monetary damages against the defendants in their official, versus individual, capacities under §1983. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002) (citing Will, 491 U.S. at 66); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003)).

The plaintiff also seeks injunctive relief ordering the DOC to follow its policies "regarding the safety and security of all inmates" and to pay for his future medical costs. The plaintiff lacks standing to seek injunctive relief on behalf of incarcerated persons other than himself. See Lewis v. Casey, 518 U.S. 343, 349–50 (1996); Massey v. Helman, 196 F.3d 727, 739–40 (7th Cir. 1999). But he can seek injunctive relief ordering the DOC to pay for his future medical costs. The court will allow the plaintiff to proceed on his official capacity claim for injunctive relief for future medical costs. Because the defendants all worked for the same DOC prison, the court will allow the plaintiff to proceed on this claim against Dr. Sukowaty only because his claims against the other

defendants in their official capacities would be duplicative of (that is, the same as) his official-capacity claim against Sukowaty.

Because the plaintiff does not know the names of the John/Jane Doe defendants, he must use discovery to learn their names. Once both named defendants (Denise Valerius and Doctor Sukowaty) have responded to the plaintiff's complaint, the court will issue a scheduling order setting deadlines for the parties to complete discovery and file dispositive motions. The order also will set a deadline for the plaintiff to identify the Doe defendants and will give the plaintiff additional information for identifying them. **The plaintiff must not start the process of identifying the Doe defendants until the court has issued the scheduling order.**

Finally, it is possible the plaintiff's claims are untimely. The plaintiff asserts in a separate memorandum that the court should allow him to proceed under the continuing violations doctrine. Dkt. No. 2. The Seventh Circuit has explained that "[d]eliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released." Jervis v. Mitcheff, 258 F. App'x 3, 5–6 (7th Cir. 2007) (citing Heard v. Sheahan, 253 F.3d 316, 318–19 (7th Cir. 2001)). Under this doctrine, the plaintiff's "condition is properly identified as 'ongoing,' and a grievance that identifies the persistent failure to address that condition must be considered timely as long as the prison officials retain the power to do something about it."

9

Meeks v. Suliene, Case No. 11-C-0054, 2012 WL 5985482, at *3 (E.D. Wis. Nov. 29, 2012) (quotation omitted).

The plaintiff alleges that the defendants became aware of his elevated blood sugar levels in December 2017, January 2018 and June 2021, but that he was not provided proper treatment until April 2024, only two months before he was transferred to the WRC. He says that he was provided a diabetic diet at WRC, which shows that he could have received the same diet at Columbia as he alleges that he repeatedly requested. The court must liberally construe the plaintiff's allegations and will not dismiss the plaintiff's claims as untimely. But nothing in this decision forecloses the defendants from later moving to dismiss the case or moving for summary judgment on the basis that the plaintiff's claims are untimely.

## II. Motion for Preliminary Injunction and Temporary Restraining Order (Dkt. No. 4)

The plaintiff also seeks a preliminary injunction and temporary restraining order against staff at WRC. Dkt. No. 4. The plaintiff alleges that staff did not send his $405 check to the court to pay for his filing fee in this case and that they confiscated a letter from another federal judge. Id. at ¶¶1–2. He says he is otherwise "having trouble with the administration" at the WRC, which "has been contemplating transfer[r]ing [him] to another institution." Id. at ¶¶2–3. He asks the court to order the WRC to give him access to the law library and word processors and "to follow the policies of DOC at all times." Id. at 3.

"The purpose of a preliminary injunction is to preserve the status quo pending a final hearing on the merits." American Hospital Ass'n v. Harris, 625 F.2d 1328, 1330 (7th Cir. 1980) (citation omitted). "A party seeking a preliminary injunction must satisfy all three requirements in the 'threshold phase' by showing that (1) [he] will suffer irreparable harm in the period before the resolution of its claim; (2) traditional legal remedies are inadequate; and (3) there is some likelihood of success on the merits of the claim." HH-Indianapolis, LLC v. Consol. City of Indianapolis & Cnty. of Marion, Ind., 889 F.3d 432, 437 (7th Cir. 2018) (citing Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc., 549 F.3d 1079, 1086 (7th Cir. 2008)). Because the third element requires the party seeking injunctive relief to show some likelihood of success on the merits of the claims in his lawsuit, a preliminary injunction is not appropriate when "it deals with a matter lying wholly outside the issues in the suit." Prucha v. Watson, Case No. 20-cv-00199, 2021 WL 11086448, at *2 (S.D. Ind. Dec. 15, 2021) (quoting DeBeers Consol. Mines v. United States, 325 U.S. 212, 220 (1945)). "[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (citing Penn v. San Juan Hosp., Inc., 528 F.2d 1181, 1185 (10th Cir. 1975)); see also Pacific Radiation Oncology, LLC v. Queen's Medical Ctr., 810 F.3d 631, 636 (9th Cir. 2015).

The plaintiff asks the court to enjoin staff at WRC and order them to give him time in the law library and to follow all DOC policies. But his lawsuit alleges

inadequate medical treatment he received while at Columbia. The injury he claims he is suffering and for which he requests injunctive relief is not related to the claims in his complaint. The court has received the plaintiff's $405 filing fee that he says WRC officials failed to send. If the plaintiff believes that officials at the WRC have violated and continue to violate his rights, he may file a separate lawsuit making those claims. He may seek injunctive relief against the WRC officials in that lawsuit. He may not do so in this one.

### III. Conclusion

The court **DENIES** the plaintiff's motion for a preliminary injunction and temporary restraining order. Dkt. No. 4.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Denise Valerius and Doctor Sukowaty. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within sixty days.

The court **ORDERS** that the parties must not begin discovery until after the court issues a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge

institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 22nd day of January, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

---

Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.