PAUL D. AMMERMAN,

                    Plaintiff,

    v.                                Case No. 24-cv-1379-pp

DENISE VALERIUS, *et al.*,

                    Defendants.

---

**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 17), GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION (DKT. NO. 24), DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER (DKT. NO. 31), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 40), DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (DKT. NO. 50) AND DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO APPEAL WITHOUT PREPAYING FILING FEE (DKT. NO. 57)**

---

The plaintiff, who is incarcerated at Stanley Correctional Institution and representing himself, filed this lawsuit alleging violations of his constitutional rights. The court screened the amended complaint (Dkt. No. 12) and allowed the plaintiff to proceed on Eighth Amendment medical care claims against the defendants (all of whom were officials at Columbia Correctional Institution, where he was confined at the time of the events alleged in the complaint) in their individual capacities based on their treatment for his prediabetes and diabetes between December 18, 2017 and April 9, 2024, and a claim against Dr. Laura Sukowaty in her official capacity for injunctive relief ordering the Department of Corrections to pay for his future medical costs. Dkt. No. 11 at 6; see also Dkt. No. 6 at 6-9.

On September 23, 2025, the court dismissed the three Doe defendants because the plaintiff did not timely identify them or ask for more time to do so. Dkt. No. 16. The remaining defendants—Denise Valerius and Laura Sukowaty—have filed a motion for partial summary judgment on exhaustion grounds. Dkt. No. 17. The plaintiff has filed a motion for reconsideration of the court's order dismissing the Doe defendants, dkt. no. 24, a motion for preliminary injunction and temporary restraining order, dkt. no. 31, a motion for reconsideration of the court's order staying the deadline for the defendants to respond to the plaintiff's motion for summary judgment, dkt. no. 50, a notice of interlocutory appeal as to the court's order staying the deadline for the defendants to respond to the plaintiff's motion for summary judgment, dkt. no. 51, and a motion for leave to appeal without prepaying the appellate filing fee, dkt. no. 57. This order addresses these motions.

## I.    Defendants' Motion for Partial Summary Judgment on Exhaustion Grounds (Dkt. No. 17)

### A.    Factual Background

As indicated, the plaintiff was confined at Columbia Correctional Institution during the events described in the complaint. Dkt. No. 20 at ¶1. The plaintiff submitted three inmate complaints potentially related to his claims: CCI-2018-2724, CCI-2024-5583, and WRC-2024-10029. Id. at ¶8.

#### 1.    *Complaint CCI-2018-2724*

As a reminder, the events about which the plaintiff complains occurred between December 18, 2017 and April 9, 2024.

In complaint CCI-2018-2724, which the plaintiff signed on January 27, 2018, he wrote that he had spoken to a nurse about wanting a diabetic diet and that the nurse had told him to self-select to not eat sugar or bread. Id. at ¶¶10-11. The plaintiff said that his one issue was that the HSU Manager was

2

"violating [his] 8th Amendment against 'cruel and unusual punishment' by being deliberately indifferent to [his] medical needs." Dkt. No. 21-2 at 8. The institution complaint examiner (ICE) recommended dismissing the complaint. Dkt. No. 20 at ¶12. The reviewing authority upheld the ICE's recommendation to dismiss the complaint but dismissed it "with modification[.]" Id. at ¶13; Dkt. No. 25 at ¶13. The reviewing authority's reason for decision states:

> HSRs responses are not always complete enough to address patient concerns. A nursing or ACP follow-up appointment for diabetic education may have better served [the plaintiff's] concerns. There was no deliberate indifference shown as advice and educational material were given. Verify that f/u occurs.

Dkt. No. 21-2 at 4. The plaintiff did not appeal the dismissal of this complaint. Dkt. No. 20 at ¶14.

### 2. *Complaint CCI-2024-5583*

The plaintiff submitted complaint CCI-2024-5583 on April 15, 2024, in which he wrote that the one issue he wanted addressed was deliberate indifference to his medical needs, negligence and malpractice. Dkt. No. 20 at ¶¶15-17. The plaintiff also wrote that he had spoken to Dr. Sukowaty, who allegedly would not address his concerns, and that he had written to the health services manager (HSM), who did not reply. Id. at ¶18. In his description of the incident, the plaintiff stated in part:

> On or around 01-08-18 and 01-18-18, I complained to HSU about pre-diabetes and if I could be put on a diabetic diet. They informed me to read a packet and self-select not to eat sugar and/or bread. See attachments – 1 and 2. They would not treat the pre-diabetes. Now in 2021 my glucose was again high and no steps were taken to prevent diabetes. Now, on 4-5-24, I was diagnosed with type 2 diabetes, even though I have been requesting treatment against diabetes.

Dkt. No. 21-3 at 11. Attachment 2 is a health service request the plaintiff submitted in January 2018 asking for a diabetic diet. Dkt. No. 21-3 at 18. The

3

request shows that defendant Valerius responded by stating that the plaintiff could self-select healthy food options and by providing him with some guidelines to help him do that. Id. The only staff member mentioned by name in CCI-2024-5583 was Sukowaty. Dkt. No. 20 at ¶20.

To investigate the complaint, the ICE contacted HSM (Health Services Manager) Acker. Dkt. No. 20 at ¶21. Acker told the ICE that the plaintiff's fasting glucose levels had been elevated since he started getting tested; that there was not a treatment for diabetes but only preventative measures such as weight loss, diet and exercise; and that Sukowaty had informed the plaintiff that he would be starting on a new medication. Id. at ¶22. The ICE recommended dismissing CCI-2024-5583. Id. at ¶23. The plaintiff appealed the dismissal to the corrections complaint examiner and the Office of the Secretary. Id. at ¶24.

### 3. *Complaint WRC-2024-10029*

The plaintiff submitted inmate complaint WRC-2024-10029 on July 3, 2024; he said that the ICE who handled complaint CCI-2024-5583 "lied" when they wrote that the DOC does not have diabetic meal trays. Dkt. No. 20 at ¶¶25-27. This complaint does not mention any HSU staff members or conduct by the HSU. Id. at ¶28. WRC-2024-10029 also was dismissed, appealed and affirmed by the Office of the Secretary. Id. at ¶29.[1]

### B. Discussion

### 1. *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[1] The plaintiff concedes that complaint WRC-2024-10029 is not relevant to his claims. Dkt. No. 26 at 1. The court will not further address that inmate complaint.

4

judgment as a matter of law." Federal Rule of Civil Procedure 56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>Ames v. Home Depot U.S.A., Inc.</u>, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." <u>See</u> <u>Anderson</u>, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

   2. *Analysis*

  The defendants contend that the plaintiff failed to exhaust his administrative remedies regarding his claim against Valerius. Dkt. No. 19 at 5. They argue that CCI-2018-2724 did not exhaust the plaintiff's claim against Valerius because he did not complete the administrative process by appealing the dismissal of the complaint. <u>Id.</u> The defendants assert that CCI-2024-5583 and WRC-2024-10029 failed to satisfy the exhaustion requirement because they did not give the prison sufficient notice of the issues the plaintiff alleged. <u>Id.</u>

  The plaintiff responds that for complaint CCI-2018-2724, the reviewing authority's decision to *modify* the dismissal of that complaint may have made the exhaustion process unavailable. Dkt. No. 26 at 2. He contends that the defendants have not met their burden to show that the appeal process was available to him when the reviewing authority modified the dismissal of the complaint. <u>Id.</u> at 2-3. The plaintiff also contends that complaint CCI-2024-5583 did fully exhaust his claim against Valerius. <u>Id.</u> at 3. The plaintiff asserts that this complaint covered everything from January 8, 2018 to the present and explained how he became diagnosed with type 2 diabetes. <u>Id.</u> And he points out that the ICE did not reject his complaint as untimely, addressing it on the

5

merits. Id. The plaintiff also asserts that the Inmate Complaint Review System (ICRS) does not require him to name Valerius in his inmate complaint, and that it is enough that his complaint gave notice of his claim against her. Id. at 4.

The Prison Litigation Reform Act (PLRA) provides that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects incarcerated individuals to adhere to "the specific procedures and deadlines" established by the institution's policy. Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. Pavey v. Conley, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

Within Wisconsin prisons, the ICRS is the administrative remedy available to incarcerated individuals with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code §DOC 310.01(2)(a). Before an incarcerated person may commence a civil action, he must exhaust all

administrative remedies that the Department of Corrections has promulgated by rule. Wis. Admin. Code §DOC 310.05. The ICRS is available for incarcerated individuals to "raise issues regarding policies, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code §DOC 310.06(1).

To use the ICRS, an incarcerated person must file a complaint with the ICE within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §DOC 310.07(2). Complaints submitted later than fourteen days after the event may be accepted for good cause. Id. Each complaint may contain only "one clearly identified issue." Wis. Admin. Code §DOC 310.07(5). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority," who may recommend that the complaint be affirmed or dismissed in whole or in part. Wis. Admin. Code §§DOC 310.10(9) & 310.10(12). Within fourteen days after the date of the decision, an incarcerated individual may appeal the reviewing authority decision to the corrections complaint examiner (CCE). Wis. Admin. Code §DOC 310.09(1). The CCE reviews the appeal and makes a recommendation to the Secretary of the DOC. Wis. Admin. Code §DOC 310.12(9). The Secretary can affirm or dismiss the CCE's recommendation, or return the appeal to the CCE for further investigation. Wis. Admin. Code §DOC 310.13(2).

It is undisputed that the plaintiff did not appeal the dismissal of his first inmate complaint, CCI-2018-2724. The plaintiff speculates that he may not have had to appeal because the reviewing authority dismissed the complaint *with modification.* In dismissing the complaint with modification, the reviewing authority said that staff should follow up with the plaintiff for diabetic

7

education and that staff had not shown deliberate indifference because they had given the plaintiff advice and educational materials. The plaintiff's complaint was dismissed, and he had an available administrative remedy to appeal the dismissal to the CCE. <u>See</u> Wis. Admin. Code §§ DOC 310.09(1), 310.12. "To satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances." <u>Chambers v. Sood</u>, 956 F.3d 979, 983 (7th Cir. 2020) (citing <u>Lockett v. Benson</u>, 937 F.3d 1016, 1025 (7th Cir. 2019)). The plaintiff did not even try to take the step of appealing. The plaintiff did not fully exhaust his administrative remedies for CCI-2018-2724.

It is undisputed that the plaintiff fully exhausted CCI-2024-5583, but the defendants contend that that inmate complaint did not provide sufficient notice of any wrongdoing by Valerius. "The PLRA exhaustion requirement ensures that 'a prison has received notice of, and an opportunity to correct, a problem' before being drawn into litigation." <u>Jackson v. Esser</u>, 105 F.4th 948, 958-59 (7th Cir. 2024) (quoting <u>Turley v. Rednour</u>, 729 F.3d 645, 650 (7th Cir. 2013)). Assuming that an incarcerated individual has taken all the administrative steps, his "complaint will suffice for exhaustion purposes if it provides notice to the prison of 'the nature of the wrong for which redress is sought.'" <u>Id.</u> at 959 (quoting <u>Schillinger v. Kiley</u>, 954 F.3d 90, 995 (7th Cir. 2020)).

The plaintiff's Eighth Amendment claim against Valerius is based on her January 7, 2018 response to his HSU request to be placed on a pre-diabetic diet. Dkt. No. 11 at 5-6. In her response to that request, Valerius allegedly told the plaintiff to address his concerns at his next doctor's appointment, said that he could self-select healthy food options and provided him with guidelines for doing so. <u>Id.</u> Although it covers the alleged failure to properly treat the

plaintiff's pre-diabetes for a long period—from 2018 through 2024—Complaint CCI-2024-5583 provides notice of the plaintiff's claim against Valerius. In the inmate complaint, the plaintiff not only referenced his interaction with Valerius, but he also attached to the inmate complaint the January 2018 health service request and Valerius's response. And the ICE addressed the plaintiff's exchange with Valerius in the ICE report recommending dismissal of the complaint. Dkt. No. 21-3 at 23. Inmate complaint CCI-2024-5583 does not name Valerius, but the plaintiff is correct that he was not required to do so as long as his inmate complaint contained "enough information about who caused the grieved of problem so that a prison can properly 'investigate and resolve grievances.'" Jackson, 105 F.4th at 960; see also Jones v. Bock, 549 U.S. 199, 217 (2007) ("[N]othing in the [PLRA] imposes a 'name all defendants' requirement.").

The plaintiff fully exhausted his administrative remedies for complaint CCI-2024-5583. The inmate complaint provided notice of the events surrounding the plaintiff's claim against Valerius and the ICE addressed them in responding to the inmate complaint. The plaintiff exhausted his administrative remedies as to his claim against Valerius. The court will deny the defendants' motion for partial summary judgment on exhaustion grounds.

## II.  Plaintiff's Motion for Reconsideration (Dkt. No. 24)

The plaintiff has filed a motion for reconsideration of the court's September 23, 2025 order dismissing the Doe defendants based on the plaintiff's failure to identify them by the September 9, 2025 deadline the court set in the scheduling order. Dkt. No. 24. He says that he tried to send the defendants a request to identify the Doe defendants, but that they did not respond. Id. at 1. The plaintiff also states that the Wisconsin Resource Center

prevented him from attending the law library to work on his case and kept him in segregation for six weeks without access to a law library. Id. at 1-2. The plaintiff states that when he transferred to Stanley Correctional Institution,[2] officers "were kind enough to empty all folders and put all [his] paperwork in two boxes while shaking them up a bit." Id. at 2. He says that his USBs—which contained his drafts and dates, including the date he sent the discovery request to the defendants—are missing. Id.

The defendants respond that the plaintiff's motion offers no new evidence and does not identify any manifest error of law justifying revisiting the court's order dismissing the Doe defendants. Dkt. No. 27 at 1. They assert that the plaintiff's motion is not supported by admissible evidence and misrepresents what occurred. Id. The defendants explain that they received the plaintiff's first discovery requests on August 7, 2025, and that they received a signed medical authorization from the plaintiff on September 8, 2025. Id. at 2. The defendants say that they couldn't answer the plaintiff's August 7, 2025 discovery requests before getting the plaintiff's medical records and that after they received the authorization, they began obtaining records and proceeded with discovery. Id. The defendants contend that the court must deny the plaintiff's motion because the plaintiff took no action to alert the court that he would not be able to timely identify the Doe defendants. Id. at 5. Alternatively, they state that if the court re-opens discovery, it should adjust the case deadlines. Id. at 6.

Federal Rule of Civil Procedure 54(b) allows any order adjudicating fewer than all claims to be revised at any time before an entry of judgment that adjudicates all the claims and the rights and liabilities of all the parties.

---

[2] The Wisconsin Department of Corrections website shows that the plaintiff moved from the Wisconsin Resource Center to Stanley Correctional Institution on September 17, 2025. https://appsdoc.wi.gov/lop/details/detail

Motions to reconsider (or more formally, to revise) an order under Rule 54(b) are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e): "to correct manifest errors of law or fact or to present newly discovered evidence." Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir.1987) (quoting Keene Corp. v. Int'l Fid. Ins. Co., 561 F. Supp. 656, 665-66 (N.D.Ill.1982), aff'd, 736 F.2d 388 (7th Cir. 1984) (citation and footnote omitted)), amended by, 835 F.2d 710 (7th Cir. 1987); compare Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir.1996) (providing nearly identical standard for motion under Rule 59(e)).

The court will allow the plaintiff to identify the Doe defendants. Along with their response to the plaintiff's motion for reconsideration, the defendants filed the plaintiff's discovery requests, which show that he submitted discovery requests to the defendants on August 4, 2025 "for discovery of the John/Jane Doe nurse and doctor." Dkt. No. 28-1 at 1. The court isn't clear about whether the defendants responded to these discovery requests. They say they couldn't respond *right away* because they had not yet received the plaintiff's medical authorization and that by the time they received it, the deadline for the plaintiff to identify the Doe defendants almost had passed. In the meantime, the plaintiff did not have access to the library at the Wisconsin Resource Center and he was transferred to another institution on September 17, 2025, after which he says his legal work was dumped into two boxes and he didn't have access to the information on his USB drives. The plaintiff should have requested more time to identify the Doe defendants, but he says that the USBs contained relevant case dates or deadlines. All these factors weigh in favor of giving the plaintiff the opportunity to identify the Doe defendants. This order will set a deadline for the plaintiff to do so.

11

On January 28, 2026, the plaintiff filed a motion for summary judgment as to his claims against defendants Sukowaty and Valerius. Dkt. No. 40. Because this order grants the plaintiff's motion for reconsideration and allows him to identify the Doe defendants, the court will deny without prejudice the plaintiff's motion for summary judgment. Once the plaintiff identifies the names of the Doe defendants and they have answered the amended complaint, the court will allow the parties to conduct limited discovery and will set a new deadline for the parties to file motions for summary judgment. At that time, the plaintiff may renew his motion for summary judgment as to Sukowaty and Valerius simply by filing a motion to renew and referring to the prior summary judgment motion; if he plans to seek summary judgment only as to Sukowaty and Valerius, he does not need to refile the summary judgment motion. Alternatively, the plaintiff may file a new, comprehensive motion for summary judgment as to his claims against all the defendants.

### III. Plaintiff's Motions for Preliminary Injunction and Temporary Restraining Order (Dkt. No. 31)

The plaintiff moves for an injunction requiring the Department of Corrections to distribute his legal mail in a timely fashion and to either create a diabetic diet according to Division of Adult Institution policy 500.30.24 or follow Nurse Valeria's packet explaining "Meal Planning with the Diabetes Exchanges." Dkt. No. 31 at 1. The plaintiff states that he seeks injunctive relief related to his legal mail because recently he received a letter from counsel for the defendants postmarked September 3, 2025; he says that the letter was received in the institution on September 25, 2025, but not given to him until October 21, 2025. Id. at 2. The plaintiff is concerned that if he does not timely receive his mail, the court may dismiss his claims or his case. Id. He also asks the court to order the DOC to follow its own policies and/or meal planning with

diabetes exchanges they give him. Id. The plaintiff says that he has not been consuming enough calories lately and that Stanley, where he currently is incarcerated, "is taking the stand that there are no Diabetic Diets." Id. He states that he cannot do these exchanges on his own with the meals provided. Id. The plaintiff says that "[t]hey have the training and knowledge with this disease but informed me to treat myself by self-selecting which foods not to eat, which as the menu[]s I have provided show roughly 80% or higher is either bread or sugar[.]" Id. at 3. He also seeks a temporary restraining order requiring the DOC to refrain from taking any retaliatory action against him for filing and prosecuting this lawsuit. Id.

The defendants respond that the court should deny the plaintiff's motion because it is not supported by admissible evidence. Dkt. No. 32 at 3-4. They contend that the plaintiff's request for injunctive relief regarding alleged mail delays and other conduct unrelated to the underlying issue in this case is improper and that the court should deny it. Id. at 4-6. The defendants contend that the plaintiff does not have a likelihood of success on the merits with respect to his claims about a diabetic diet. Id. at 6-9. According to the defendants, the medical record reflects ongoing monitoring and reasonable treatment decisions within the range of acceptable professional judgment. Id. at 9. They assert that the plaintiff has not produced admissible evidence that the defendants' care was so plainly inappropriate as to show intentional mistreatment, nor has he shown that any defendant consciously disregarded a serious risk to his health. Id. The defendants also contend that the plaintiff is not suffering irreparable harm and that he does not lack adequate remedies at law. Id. at 9-10. They assert that the balance of harms weighs in their favor. Id. at 10-13.

The Supreme Court has characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). To obtain a preliminary injunction, a plaintiff must show that he has some likelihood of success on the merits, that traditional legal remedies would be inadequate and that he likely will suffer irreparable harm in the absence of preliminary relief. Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020). "If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." Id. (citing Courthouse News Serv. v. Brown, 908 F.3d 1063, 1068 (7th Cir. 2018)). The balancing analysis involves a "'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." Id. (citing Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 895 (7th Cir. 2001)).

In the context of litigation involving incarcerated individuals, the scope of the court's authority to issue an injunction is circumscribed by the PLRA. See Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); see also Westefer, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary

14

authority over the institutions they manage" (internal quotation marks and citation omitted)).

The plaintiff is not eligible for injunctive relief for his allegations concerning delays receiving his legal mail because those allegations do not relate to his underlying claims in this case. See Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (*per curiam*) (holding that "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint"). The plaintiff's request for a temporary restraining order prohibiting the DOC from retaliating against him is conclusory and speculative; the court cannot grant the plaintiff injunctive relief based on his assertions that the DOC *may* retaliate against him.

The plaintiff also asks the court to order the officials at Stanley to provide him with a diabetic diet. Because the plaintiff has not provided admissible evidence in support of his motion for injunctive relief, he is not entitled to that relief. See Akbar v. Borgen, 796 F. Supp. 1181, 1186 (E.D. Wis. 1992) (denying injunction request when incarcerated individual failed to produce evidence supporting his allegations).

The defendants have submitted evidence regarding treatment for diabetes generally and the treatment the plaintiff has received. Dkt. Nos. 33, 33-1, 33-2. Treatment for type 2 diabetes requires a lifelong commitment to blood sugar monitoring, healthy eating, regular exercise and, possibly, diabetes medication or insulin therapy. Dkt. No. 33 at ¶18. The defendants have provided evidence showing that the plaintiff received treatment for his diabetes before transferring to Stanley on September 17, 2025. Id. at ¶¶29-34. He also receives treatment for his diabetes at Stanley. The plaintiff's last medical appointment for his

15

diabetes was on December 10, 2025, and the results of his tests still were pending as of the date of Sukowaty's last review. Id. at ¶35. He currently is on medication for diabetes but has not yet needed to start insulin. Id. at ¶36. Contrary to the plaintiff's assertions, DOC policy does not provide for a special diabetic diet. Id. at ¶¶37-38. Rather, HSU staff is supposed to meet with the patient and discuss the issue of diet and what self-selected substitutions the patient can make to reduce blood sugar. Id. DOC staff did this with the plaintiff. Id. at ¶38. In addition to the regular menu, incarcerated individuals can order whatever they like from the canteen. Id. at ¶37. Canteen records show that contrary to instructions to select low-sugar options, the plaintiff routinely orders and consumes high-sugar items from the canteen, such as fudge Pop-Tarts and other sweets, using his own funds. Id. at ¶¶40-42, Exh. 1005.

The plaintiff's claim is based on allegations that while at Columbia, he did not receive proper treatment for his pre-diabetes, which led to his type 2 diabetes diagnosis in 2024. The plaintiff states that based on DAI policy and a guide he received from Valerius in 2018, he should have a diabetic diet. He acknowledges that he has received education about what foods to eat for his condition but says that instead of providing him with a diabetic diet, staff instruct him to self-select appropriate foods. The plaintiff's claim that he is not receiving proper treatment for his diabetes at Stanley is contradicted by the evidence the defendants submitted in response to his motion. The plaintiff has not shown that he is entitled to injunctive relief. The court will deny his motion for preliminary injunction and temporary restraining order.

16

## IV. Plaintiff's Motion for Reconsideration (Dkt. No. 50)

The plaintiff moves for reconsideration of the court's March 2, 2026 order granting the defendants' motion for an extension of time to respond to the plaintiff's motion for summary judgment. Dkt. No. 50. The plaintiff says that he did not have an opportunity to respond because the court issued its order four days after the defendants filed their motion. Id. at 1. He asserts that the defendants' motion for an extension of time was untimely because he filed his summary judgment motion on January 17, 2026, and the defendants didn't file their request for an extensions until February 26, 2026, which was after their summary judgment response deadline. Id. But the court received the plaintiff's motion for summary judgment on January 28, 2026. Dkt. No. 40. This means that the defendants' response was due on February 27, 2026. See Civil Local Rule 56(b)(2) (E.D. Wis.). The court received the defendants' motion for the extension of time on February 26, 2026, one day before their summary judgment response deadline. Their motion was timely, and the court will deny the plaintiff's motion for reconsideration. And at this point, the ruling is moot because the court has denied the plaintiff's motion without prejudice so that he can decide whether he needs to modify it once he identifies the Doe defendants and they answer.

## V. Plaintiff's Notice of Interlocutory Appeal and Motion for Leave to Proceed Without Prepaying of Filing Fee (Dkt. Nos. 51, 57)

The plaintiff has filed a notice of interlocutory appeal in which he says that he intends to appeal this court's order granting the defendants' motion for extension of time to respond to his motion for summary judgment. Dkt. No. 51. The plaintiff has also filed a motion for leave to appeal without prepaying the filing fee. Dkt. No. 57.

17

A party may take an interlocutory appeal (an appeal from an order that does not resolve the case) under 28 U.S.C. §1292(b) if the district court certifies that the otherwise unappealable order involves a (1) controlling question of law, (2) as to which there is substantial ground for difference of opinion and (3) immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. §1292(b). A "question of law" refers to a question regarding the meaning of a statutory or constitutional provision, regulation or common law doctrine. Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1007 (7th Cir. 2002) (citing Ahrenholz v. Bd. of Trustees of the Univ. of Ill., 219 F.3d 674, 675 (7th Cir. 2000)).

There is no basis for this court to certify an interlocutory appeal of its March 2, 2026 order. The court's order staying the defendants' deadline to respond to the plaintiff's motion for summary judgment on the merits until it resolved the defendants' motion for summary judgment on exhaustion grounds does not involve controlling questions of law. And now, the court has denied without prejudice the plaintiff's motion for summary judgment so that he can decide whether he'll need to modify it after he identifies the Doe defendants and they answer. Because the court declines to certify an interlocutory appeal, it will deny as moot the plaintiff's motion to proceed on appeal without prepaying the filing fee. Dkt. No. 57.

## VI. Conclusion

The court **DENIES** the defendants' motion for partial summary judgment on exhaustion grounds. Dkt. No. 17.

The court **GRANTS** the plaintiff's motion for reconsideration of the court's order dismissing the Doe defendants. Dkt. No. 24. The court **ORDERS** that the Doe defendants are **REINSTATED**. The court **ORDERS** that the

18

plaintiff must identify the Doe defendants or file a motion for extension of time to identify them, by the end of the day on **July 31, 2026**. If the plaintiff does not identify the Doe defendants or ask for more time to do so by the end of the day on July 31, 2026, the court will dismiss the Doe defendants.

The court **ORDERS** that discovery is reopened for the limited purpose of allowing the plaintiff to identify the Doe defendants. The defendants must respond to the plaintiff's discovery requests at Dkt. No. 28-1 within thirty days of the date of this order, if they have not already done so. The defendants must respond to any of the plaintiff's other discovery requests within thirty days after receiving them.

The court **DENIES** the plaintiff's motion for preliminary injunction and temporary restraining order. Dkt. No. 31.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for summary judgment. Dkt. No. 40.

The court **DENIES** the plaintiff's motion for reconsideration of the court's order granting the defendants' motion for an extension of time. Dkt. No. 50.

The court **DENIES AS MOOT** the plaintiff's motion for leave to appeal without prepaying the filing fee. Dkt. No. 57.

Dated in Milwaukee, Wisconsin this 26th day of May, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

19