UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PAUL D. AMMERMAN,

                              Plaintiff,

v.                                                    Case No. 24-cv-1379-pp

DENISE VALERIUS, *et al.*,

                              Defendants.

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 62) AND GRANTING PLAINTIFF'S MOTION TO CLARIFY (DKT. NO. 63)**

The plaintiff, who is incarcerated at Stanley Correctional Institution and representing himself, filed this lawsuit alleging violations of his constitutional rights. The court screened the amended complaint (Dkt. No. 12) and allowed the plaintiff to proceed on Eighth Amendment medical care claims against the defendants (all of whom were officials at Columbia Correctional Institution, where the plaintiff was confined at the time of the events alleged in the complaint) in their individual capacities based on their treatment for his prediabetes and diabetes between December 18, 2017 and April 9, 2024, and a claim against Dr. Laura Sukowaty in her official capacity for injunctive relief ordering the Department of Corrections to pay for his future medical costs. Dkt. No. 11 at 6; see also Dkt. No. 6 at 6-9. This order addresses the plaintiff's motion to appoint counsel, dkt. no. 62, and his motion to clarify, dkt. no. 63.

1

In his motion to appoint counsel, the plaintiff states that he unsuccessfully has tried to find a lawyer on his own. Dkt. No. 62 at 1. He asks the court to appoint him counsel due to his poverty and because this case has become more difficult and "medically confusing in nature." Id. The plaintiff states that counsel has a better chance of contacting medical professionals and presenting evidence regarding the plaintiff's medical care. Id. at 3.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the

3

case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." <u>Pickett</u>, 930 F.3d at 871.

The plaintiff has made a reasonable attempt to find a lawyer on his own, so has satisfied the first prong. But his filings demonstrate that he can advocate for himself and communicate well. The filings are clear and persuasive. The plaintiff's claims are not complex; they involve incidents that he has described in the amended complaint and of which he has personal knowledge. The plaintiff successfully defended against the defendants' motion for partial summary judgment on exhaustion grounds. Dkt. Nos. 25, 26. In the court's May 26, 2026 order denying the defendants' motion for partial summary judgment on exhaustion grounds, the court granted the plaintiff's motion for reconsideration of the court's prior order dismissing the Doe defendants, reinstated the Doe defendants and gave the plaintiff more time to identify them. Dkt. No. 61 at 18-19. The court's order also denied without prejudice the plaintiff's merits-based motion for summary judgment and said that after the plaintiff identifies the Doe defendants, he may reinstate his motion for summary judgment or file a new, comprehensive summary judgment motion against all defendants. <u>Id.</u> at 12, 19. Simply put, the plaintiff's filings show that he is capable of representing himself through the summary judgment stage of this case and the court will deny without prejudice his motion to appoint counsel.

The plaintiff has filed a motion asking the court to clarify "certain decisions" from its May 26, 2026 order. Dkt. No. 63 at 1. First, the plaintiff

4

asks why the court didn't grant his request for injunctive relief for a diabetic diet, given that the parties agree that treatment of Type 2 diabetes requires healthy eating. Id. Second, regarding the court's decision to deny the plaintiff's request for injunctive relief that the mailroom perform its ministerial duties by not obstructing the mail system, the plaintiff asks why the court determined that his request did not relate to the complaint, yet relied on a canteen order to deny his other request for injunctive relief. Id. at 1-2. Third, the plaintiff seeks clarification on a conduct report that he says he received and asks if it would be retaliation for litigating a civil suit. Id. at 2-3. Fourth, the plaintiff asks if the defendants' time to respond to his motion for summary judgment would be the same if he does not modify or supplement his motion for summary judgment. Id. at 3-4.

To the extent that the plaintiff filed this motion to express his disagreement with any of the rulings in the court's May 26, 2026 order, he has not demonstrated that the court's order contains a legal error and the court will not revisit those rulings. To the extent that the plaintiff seeks clarification of the order, the court will grant his motion to clarify and refer him to the comprehensive discussion in the order addressing his motions.

The court denied the plaintiff's motions for preliminary injunction and temporary restraining order, stating in part:

> The plaintiff is not eligible for injunctive relief for his allegations concerning delays receiving his legal mail because those allegations do not relate to his underlying claims in this case. See Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (holding that "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in

5

the party's motion and the conduct asserted in the complaint"). The plaintiff's request for a temporary restraining order prohibiting the DOC from retaliating against him is conclusory and speculative; the court cannot grant the plaintiff injunctive relief based on his assertions that the DOC may retaliate against him.

The plaintiff also asks the court to order the officials at Stanley to provide him with a diabetic diet. Because the plaintiff has not provided admissible evidence in support of his motion for injunctive relief, he is not entitled to that relief. See Akbar v. Borgen, 796 F. Supp. 1181, 1186 (E.D. Wis. 1992) (denying injunction request when incarcerated individual failed to produce evidence supporting his allegations).

The defendants have submitted evidence regarding treatment for diabetes generally and the treatment the plaintiff has received. Dkt. Nos. 33, 33-1, 33-2. Treatment for type 2 diabetes requires a lifelong commitment to blood sugar monitoring, healthy eating, regular exercise and, possibly, diabetes medication or insulin therapy. Dkt. No. 33 at ¶18. The defendants have provided evidence showing that the plaintiff received treatment for his diabetes before transferring to Stanley on September 17, 2025. Id. at ¶¶29-34. He also receives treatment for his diabetes at Stanley. The plaintiff's last medical appointment for his diabetes was on December 10, 2025, and the results of his tests still were pending as of the date of Sukowaty's last review. Id. at ¶35. He currently is on medication for diabetes but has not yet needed to start insulin. Id. at ¶36. Contrary to the plaintiff's assertions, DOC policy does not provide for a special diabetic diet. Id. at ¶¶37-38. Rather, HSU staff is supposed to meet with the patient and discuss the issue of diet and what self-selected substitutions the patient can make to reduce blood sugar. Id. DOC staff did this with the plaintiff. Id. at ¶38. In addition to the regular menu, incarcerated individuals can order whatever they like from the canteen. Id. at ¶37. Canteen records show that contrary to instructions to select low-sugar options, the plaintiff routinely orders and consumes high-sugar items from the canteen, such as fudge Pop-Tarts and other sweets, using his own funds. Id. at ¶¶40-42, Exh. 1005.

The plaintiff's claim is based on allegations that while at Columbia, he did not receive proper treatment for his pre-diabetes, which led to his type 2 diabetes diagnosis in 2024. The plaintiff states that based on DAI policy and a guide he received from Valerius in 2018, he should have a diabetic diet. He acknowledges that he has received education about what foods to eat for his condition but says that instead of providing him with a diabetic diet,

6

staff instruct him to self-select appropriate foods. The plaintiff's claim that he is not receiving proper treatment for his diabetes at Stanley is contradicted by the evidence the defendants submitted in response to his motion. The plaintiff has not shown that he is entitled to injunctive relief. The court will deny his motion for preliminary injunction and temporary restraining order.

Dkt. No. 61 at 15-16.

Regarding the plaintiff's request about the defendants' response to his motion for summary judgment, the court denied the plaintiff's motion for summary judgment (without prejudice) which means that the motion is no longer pending, and the defendants are not required to respond to it.

> On January 28, 2026, the plaintiff filed a motion for summary judgment as to his claims against defendants Sukowaty and Valerius. Dkt. No. 40. Because this order grants the plaintiff's motion for reconsideration and allows him to identify the Doe defendants, the court will deny without prejudice the plaintiff's motion for summary judgment. Once the plaintiff identifies the names of the Doe defendants and they have answered the amended complaint, the court will allow the parties to conduct limited discovery and will set a new deadline for the parties to file motions for summary judgment. At that time, the plaintiff may renew his motion for summary judgment as to Sukowaty and Valerius simply by filing a motion to renew and referring to the prior summary judgment motion; if he plans to seek summary judgment only as to Sukowaty and Valerius, he does not need to refile the summary judgment motion. Alternatively, the plaintiff may file a new, comprehensive motion for summary judgment as to his claims against all the defendants.

Id. at 12. If the plaintiff renews his motion for summary judgment or files another summary judgment motion, the defendants will need to respond to that motion.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 62.

The court **GRANTS** the plaintiff's motion for clarification. Dkt. No. 63.

Dated in Milwaukee, Wisconsin this 22nd day of June, 2026.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**

8