UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

PAUL D. AMMERMAN,

Plaintiff,

v. Case No. 24-cv-1379-pp

DENISE VALERIUS, *et al.*,

Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS (DKT. NO. 65), DENYING PLAINTIFF'S MOTION FOR "STUFF" (DKT. NO. 68), DENYING AS MOOT PLAINTIFF'S MOTION FOR EXTENSION OF TIME (DKT. NO. 70), DISMISSING DOE DEFENDANTS AND SETTING DEADLINE FOR PARTIES TO FILE MOTIONS FOR SUMMARY JUDGMENT ON THE MERITS**

---

Plaintiff Paul D. Ammerman, who is incarcerated at Dodge Correctional Institution and is representing himself, filed this lawsuit alleging violations of his constitutional rights. The court screened the amended complaint (Dkt. No. 12) and allowed the plaintiff to proceed on Eighth Amendment medical care claims against the defendants in their individual capacities based on their treatment for his prediabetes and diabetes between December 18, 2017 and April 9, 2024, and a claim against Dr. Laura Sukowaty in her official capacity for injunctive relief ordering the Department of Corrections (DOC) to pay for his future medical costs. Dkt. No. 11 at 6; see also Dkt. No. 6 at 6-9. This order addresses the plaintiff's motion for sanctions, dkt. no. 65, his motion for "stuff," dkt. no. 68, and his motion for an extension of time, dkt. no. 70. The order also dismisses the Doe defendants and sets a deadline for the parties to file motions for summary judgment on the merits.

## I. Motions for Sanctions and for Extension of Time (Dkt. Nos. 65, 70)

On July 20, 2026, the court received from the plaintiff a motion for sanctions against defendant Sukowaty for falsely stating in her declaration (Dkt. No. 33) that the DOC "does not have a specific 'diabetic diet.'" Dkt. No. 65 at 1. The plaintiff contends that, contrary to Sukowaty's declaration, the DOC does have a diabetic diet, and he refers to the DOC's Diet Manual which contains a page for "Guidelines for Following Your Diabetic Diet[.]" Id. The plaintiff also asserts that Sukowaty has tried to confuse the court by using different sugar recording scales—the mg/dL scale and the AIC scale. Id. at 1, 3. The plaintiff states that Sukowaty used lower numbers to inform the court that the plaintiff did not reach the prediabetic threshold but if he "did reach a prediabetic threshold they switch[ed] to the mg/dL to show that [the plaintiff] was '*barely*' over the prediabetic line." Id. at 3. The plaintiff states that the court should enter judgment against Sukowaty based on her perjured statement and for trying to manipulate the court by using the best numbers to suit the defendants' arguments. Id. at 4.

The defendants respond that the plaintiff has not shown the required bad faith to warrant sanctions and his motion is based on a misunderstanding of what the "diabetic diet" at the DOC is. Dkt. No. 67 at 1-2. The defendants assert that, as Sukowaty previously explained, diabetic patients in the DOC are educated to self-select appropriate foods from the regular menu and the DOC does not automatically place every diabetic patient on a separate specialized meal plan. Id. at 1 (citing Dkt. No. 33 at ¶¶37-39). The DOC's "diabetic diet" is a set of guidelines that incarcerated individuals are advised to adhere to and make food selections based on. Id. The defendants state that at most, the plaintiff's motion identifies a disagreement about what Sukowaty meant when

she said the DOC does not have a specific "diabetic diet," and that his motion does not show that Sukowaty knowingly made a false statement. Id. at 2. The defendants also contend that the plaintiff's "manipulation" theory fails because A1C and blood-glucose measurements provide different information, and Sukowaty explained the significance of each. Id. (citing Dkt. No. 33 at ¶¶15, 29-31).

The court has the inherent power to sanction a party's misconduct. Salmeron v. Enter. Recovery Sys., Inc., 579 F.3d 787, 789 (7th Cir. 2009). "Sanctions meted out pursuant to the court's inherent power are appropriate where the offender has willfully abused the judicial process or otherwise conducted litigation in bad faith." Id. "A litigant's misconduct can justify default judgment . . . and perjury is among the worst kinds of misconduct." Rivera v. Drake, 767 F.3d 685, 686 (7th Cir. 2014) (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639 (1976)).

The plaintiff has not shown that Sukowaty's declaration contains perjury or that the defendants otherwise have litigated in bad faith. The defendants have clarified and reiterated that the DOC's "diabetic diet," to which Sukowaty referred in her declaration, consists of an incarcerated individual self-selecting appropriate foods from the regular diet. Likewise, Sukowaty's declaration explains why A1C percentages and blood-glucose results both appear in the record, and explains that the record did not treat them as interchangeable. The plaintiff has not submitted evidence to support his claim that Sukowaty tried to manipulate or confuse the court. The court will deny the plaintiff's motion for sanctions.

On August 28, 2026, the court received from the plaintiff a motion for extension of time to file a reply in support of his motion for sanctions. Dkt. No.

70. He says that he had brain surgery and he has another surgery coming up. Id. The plaintiff asks for more time until after "post op" or until he gets a lawyer. Id. The plaintiff's motion for sanctions is based on his assertion that Sukowaty's declaration contains false statements. As explained above, the court has determined that it does not. A reply brief from the plaintiff would not add anything to this issue. The court will deny as moot his motion for extension of time.

## II. Motion for "Stuff" (Dkt. No. 68)

On August 6, 2026, the plaintiff filed a document titled "Motion for Stuff" in which he says that in July he attempted to commit suicide by jumping headfirst from the second tier onto his head after which he was rushed to the hospital for neurological surgery. Dkt. No. 68 at 1. The plaintiff says that he spent ten days at the hospital, then transferred to Dodge Correctional Institution. Id. He asserts that this "created problem[s] with his access to his property, access to any court documents (lack of tabl[ ]et), any and all case files, and many items that he has forgotten about." Id. The plaintiff asks the court to help him obtain the property he needs to continue litigating this case including his paperwork, typewriter and "other necessary items[.]" Id. He also asks the court to recruit a lawyer for him. Id. at 2. The defendants have not filed a response to the plaintiff's motion.

About one month has passed since the plaintiff filed his motion. During that time, he filed a motion for extension of time (addressed in the preceding section) that references a prior motion. Dkt. No. 70. Based on this filing, it appears that the plaintiff may have obtained access to court documents and other property items. If the plaintiff still needs certain property to litigate, he should request those items from his institution. If he is unable to obtain from

the institution something that he believes he needs to litigate this case, he may tell the court what he needs and why he has not received it. The court will deny the plaintiff's request that the court help him obtain property.

As stated above, the plaintiff also asks the court to recruit a lawyer for him. On June 22, 2026, the court denied without prejudice the plaintiff's first motion to appoint counsel. Dkt. No. 64 at 7. The court reasoned:

> The plaintiff has made a reasonable attempt to find a lawyer on his own, so has satisfied the first prong. But his filings demonstrate that he can advocate for himself and communicate well. The filings are clear and persuasive. The plaintiff's claims are not complex; they involve incidents that he has described in the amended complaint and of which he has personal knowledge. The plaintiff successfully defended against the defendants' motion for partial summary judgment on exhaustion grounds. Dkt. Nos. 25, 26. In the court's May 26, 2026 order denying the defendants' motion for partial summary judgment on exhaustion grounds, the court granted the plaintiff's motion for reconsideration of the court's prior order dismissing the Doe defendants, reinstated the Doe defendants and gave the plaintiff more time to identify them. Dkt. No. 61 at 18-19. The court's order also denied without prejudice the plaintiff's merits-based motion for summary judgment and said that after the plaintiff identifies the Doe defendants, he may reinstate his motion for summary judgment or file a new, comprehensive summary judgment motion against all defendants. Id. at 12, 19. Simply put, the plaintiff's filings show that he is capable of representing himself through the summary judgment stage of this case and the court will deny without prejudice his motion to appoint counsel.

Id. at 4.

Since the court denied the plaintiff's first motion to appoint counsel, he has injured his head and had neurological surgery. But the plaintiff's filings since the incident are still high-quality and persuasive, and the court still believes that the plaintiff can litigate on his own. This order will set new deadlines for the parties to file motions for summary judgment on the merits. (As explained below, the plaintiff may renew his prior motion for summary

judgment.) Based on the foregoing, the court will deny the plaintiff's motion for "stuff."

## III. Doe Defendants and Summary Judgment Deadline

On May 26, 2026, the court granted the plaintiff's motion for reconsideration of the court's order dismissing the Doe defendants. Dkt. No. 61 at 18-19. The court reinstated the Doe defendants and ordered that the plaintiff must identify them by July 31, 2026. Id. at 19. The court said that if by July 31, 2026, the plaintiff did not identify the Doe defendants or ask for more time to do so, the court would dismiss the Doe defendants. Id. The plaintiff has neither identified the Doe defendants nor asked for more time to do so. The court will dismiss the Doe defendants.[1]

Because it has dismissed the Doe defendants, the court will set a new deadline for the parties to file motions for summary judgment on the merits. The court reminds the plaintiff that, as stated in the court's May 26, 2026 order, he may renew his prior motion for summary judgment as to defendants Sukowaty and Valerius by filing a motion to renew and referring to the prior summary judgment motion and supporting documents (Dkt. Nos. 40-44). Dkt. No. 61 at 12. The plaintiff must file either his motion to renew or a new motion for summary judgment by the deadline the court will set below for the parties to file motions for summary judgment on the merits.

## IV. Conclusion

The court **DENIES** the plaintiff's motion for sanctions. Dkt. No. 65.

---

[1] Although the court recognizes that in July 2026, the plaintiff suffered a head injury and spent ten days in the hospital, the court's order granting the plaintiff's motion for reconsideration and setting a deadline to identify the Doe defendants was entered on May 26, 2026, over a month before he injured his head.

The court **DENIES** the plaintiff's motion for "stuff." Dkt. No. 68.

The court **DENIES AS MOOT** the plaintiff's motion for extension of time. Dkt. No. 70.

The court **DISMISSES** defendants John/Jane Doe Doctor at CCI, John/Jane Doe Nurse at CCI and John/Jane Doe Nurse at CCI.

The court **ORDERS** that the deadline for the parties to file motions for summary judgment on the merits is **October 16, 2026**.

Dated in Milwaukee, Wisconsin this 11th day of September, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**